Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Anne H. Jorgensen, S.I. Please be seated. Your Honors, the first case on the docket this morning is 2-24-0121. John Martinez, S.I. Prestige Imports, Inc. Appellate. Arguably on behalf of the Appellant, Mr. Dimitri N. Bianco. Arguably on behalf of the Appellees, Mr. Michael O'Shea. Okay. Counsel, present in court, you are ready to proceed? Yes, Your Honor. And Counsel, appearing remotely, first can you hear us perfectly? Yes. Yes, Your Honor, I can. Okay, and we are able to hear you. I just want the recording to understand. Counsel will be appearing remotely, and we are otherwise ready to proceed? Yes, Your Honor. Okay. Then, Counsel, proceed when you are ready. May it please the Court, members of the panel, my name is Dimitri Filofanov. I represent the Appellant in this case. I don't have much of an argument because I think the briefs fairly set out the parties' positions in this case. And so I'm kind of at a loss as to what to do. I can give a thumbnail sketch of the issues before the Court, but my preference would be really to defer to you and ask the panel whether you have any questions or issues that I failed to address in my briefs and attempt to answer them to the best I can. Counsel, during the hearing on the motion to strike the affirmative defense, you told the Court after the Court ruled that you have no case, and you agreed to an oral motion for summary judgment. Why isn't that a judicial admission that's binding upon you and binding upon your client? You said you have no case. No, that is not quite what I said. I said if there is a ruling against us, then we have no case. Well, the Court ruled against you, and you said we have no case. I don't think that was the meaning of my statement. We, of course, contend that the ruling is incorrect. My statement was that we had no case. If there is no warranty, our contention has been and is that there is a warranty. Let me ask this. What specifically was wrong with the Camaro that Mr. Martinez bought? Because the only exhibits in the record mentioned the heater, the front seats, the tire pressure pedal, the shifter, the windshield, nothing to do with the powertrain. Yes. The powertrain, of course, is the item covered by the Section 2L, which is the statutory 15-day 500-mile warranty. His issue was, as it turned out, his real issue was something having to do with one of the valves, one of the sensors in the car, which he eventually managed to diagnose through a third-party car mechanic. Admittedly, it had nothing to do with the powertrain. Okay. But the theory... So, again, there is nothing pled with regard to the powertrain, correct? We concede that the powertrain was not affected. The issue here is not... In fact, the powertrain is not an issue here because the Section 2L does not apply. What does apply is the good old-fashioned UCC, Implied Warranty of Merchantability, under Section 314, which talks about fitness for ordinary purposes, and the car did have a defect. And, of course, during trial, we will have to prove, under the Alvarez case, that those defects were present at the time of sale by inference, by showing the absence of abnormal use or reasonable secondary causes. And that we are prepared to do. The issue here, however, is whether or not there was an Implied Warranty of Merchantability under the UCC at all. Let me ask you this. You would agree that one of the primary rules of statutory construction is to give meaning to all the contract's language. Would you agree? Yes, absolutely. Okay. Based on the language of the contract. If that is the case, what do you make of the language under the system's cover of the Buyer's Guide, which refers to Section 2L but not to the UCC? Yes. Absolutely. I have it right here. I think your Honor, it refers to the language next to my finger. And it says systems covered with 15 days, 500 miles. And that's the only box. That's the only one that's filled in. Oh, no. I beg to differ. That is not the only box that is filled in. The box that is filled in says Implied Warranty. And it uses the term may, which is permissive, not mandatory. May. Correct? Well, that's the language below the Implied Warranties Only. The statement Implied Warranties Only does not say may. And it refers to multiple warrants. So it's true that the language that your Honor refers to references 2L. But the problem is not this. The problem is that the other warranty, the UCC warranty, in order not to be applicable must be disclaimed. There is nothing in the Buyer's Guide that disclaims it. And that is, at the very least, it creates an ambiguity which is resolved against the dealer. So you're reading the term may to be a mandatory provision? That may, as you know, ordinarily is permissive. There are actually cases that say in some instances may is a mandatory. It, of course, does some violence to the language. But I am aware of authority that says may, depending on the context, sometimes may be mandatory. But that's not the issue. In your brief, you argue that the plain language of the Buyer's Guide includes a specific reference to the UCC warranty. It does not, though, does it? No. Well, it does. It says implied warranty. There's no specific reference to the UCC warranty. No, there is no specific reference to the, well, it depends on how narrow you want to interpret your question, specific reference to the UCC. When you say implied warranty, that is the UCC warranty normally. There is additional implied warranty, which is established by the Consumer Product Section 2L. When you have plural of warranties, implied warranties, it refers to both. Because there are no, in the universe of warranties, there are no other warranties, implied warranties other than the UCC, generally speaking. And in Illinois and some other states, the statutory warranty, which is in our state, is called statuette. So according to your reading of the Buyer's Guide, every single implied warranty to have ever existed in any jurisdiction applied to this sale? No, because Illinois law applies, obviously. It's the one that you pick? Well, no, that's the one that the UCC references in Section 314. There are a non-exclusive, well, actually, let me rephrase the answer. When you say implied warranties, yes, all implied warranties that are implied by our laws apply. Section 314 has a non-exclusive list of six implied warranties, which is non-inclusive, by the way. There could be some other common law warranties. But at the minimum, we're talking about two that are referenced. Well, in an implied warranty context, there's only one that matters, which is fitness for ordinary purposes. And that's number three on the list in Section 314. And it does absolutely apply, because it's not disclaimed. For it to not apply, you have to disclaim it. Put big as is in the document. It is not there, therefore, it is present. I can also touch upon the list, if the panel wants to hear about that. Any questions? All right, counsel, you will have an opportunity to have a rebuttal. Yes, Your Honor, thank you very much. Please let us know if at any time you cannot hear, okay? I hear you fine, thank you. Counsel? Good morning, Your Honors. May it please the Court, my name is Michael Hoshite, and I represent the defendant amply in this case, Prestige Motors, Inc. And, Your Honors, I think the issue before the Court is a fairly concise one, and that's really did one implied warranty apply to this transaction, or were there two implied warranties? The implied warranties that potentially applied to this transaction at issue, which was the sale of a used automobile, were really two implied warranties. One would be the UCC implied warranty of merchantability, and that's also referenced in the Magnuson-Moss Act. And the other potential implied warranty is the 15-day, 500-mile warranty under the Consumer Fraud Act. And the law in Illinois is clear on the issue that the implied warranty of merchantability under the UCC can be modified or excluded. However, that 15-day, 500-mile powertrain warranty under the Consumer Fraud Act cannot. And it's precisely our position in this case that the UCC implied warranty of merchantability didn't apply to this transaction, and the only implied warranty that did apply was the 15-day, 500-mile warranty under the Consumer Fraud Act. And we think the contract documents and the Buyer's Guide itself clearly spells that out, and that when looking at those documents as a whole, the only reasonable interpretation of those documents suggests that the only warranty that applied was the 15-day, 500-mile warranty, which opposing counsel has conceded that he does not have a case under. All right. In your brief, you distinguish Flambright based on the language used in the Buyer's Guide there in that case. How are those specific differences relevant here? Well, those differences are relevant, Your Honor, because in the Buyer's Guide and the Flambright case, so it's the same general Buyer's Guide form. So that, you know, the FTC says you have to use one of two Buyer's Guide forms. And in Illinois, since you can't have a totally as-is saleable vehicle, you have to use the implied warranties form is what they call it. So the same form was used in this case as required by the applicable law, and the same form was used in the Flambright case. But the difference in the Flambright form versus the form that was used in this case is that in the Flambright case, the dealer warranty box was checked, which the court found to be significant because the language that was then included underneath that dealer warranty box in both the systems coverage section and the duration section, that that language, I guess, described what the dealer warranty was that was being provided in that case. And based on that interpretation, that that language under the dealer warranty section clarified what the dealer warranty included, that the implied warranties box was not modified by that language, and that left open to interpretation potentially what exact implied warranties applied to the transaction. And as I mentioned previously, there's really two potential implied warranties that could have applied here. But the difference in this case is that there is no dealer warranty box that was checked here. There's no information filled in in the limited warranty section under the dealer warranty. The information that is included on the buyer's guide form in the systems covered section clearly indicates that the implied warranty that applied here was the 15-day, 500-mile limited powertrain warranty. Counsel argues that may in this context is mandatory. Why isn't that a reasonable interpretation in context, as he indicated? Well, I think the analysis would be different here, Your Honor, if there was no language in that systems covered section. So if there was just a buyer's guide form that was provided here that only had the implied warranties only box checked and that was it, then I think you could have an argument that, well, perhaps there are more than one warranty that applied to this transaction pursuant to state law in Illinois. But that's not the case here, and that language that's in the systems covered section is significant. So that should direct a person to look at the entire contract to see what else is covered? Yes, Your Honor. So that's how you reconcile the buyer's guide with, you know, the counsel's argument. The systems covered section of the buyer's guide should lead any consumer to look at what else is covered? Yes, Judge, and I do think that part of the issue here is that these are federally mandated forms. So all the car dealers across the country really need to use these forms if they're selling used cars, right? They're not meant to confuse the buyer. They're meant to direct the buyer. Yes, yes. And they have to do the best they can with these forms, really, because the applicable statutes say that they can't modify the forms, right? So they're in kind of a tricky situation here, in my opinion. I think it would be appropriate if each state had its own specific form to perhaps better inform consumers. So your argument is there's no internal contradiction? The use of the term may above, and then you look down to the systems covered? I don't think so, Your Honor. No, I think the systems covered language in that section makes it clear that the only warranty that applied, even though there was potentially more than one warranty, as indicated in that implied warranty's paragraph, was the 15-day, 500-mile warranty. How do you recognize the as-is or reconcile the as-is language with the Buyer's Guide? Well, again, Your Honor, I don't think the Buyer's Guide can be viewed in isolation. I think that's part of the larger contract here, and I think the statute says that. Now, in interpreting the as-is provision in the purchase order, again, I don't think that can be viewed in a vacuum. You can't just look at a purchase order document to determine what exactly that means. I think you need to look at the rest of the contractual documents that were applicable here, which include the purchase order, the Buyer's Guide. There is a separate 15-day, 500-mile warranty stand-alone disclosure that the purchaser here signed, and there was a retail installment contract that also referenced that 15-day, 500-mile warranty. So in the general context, the UCC says that if you have that as-is language, that would exclude all implied warranties unless the circumstances indicate otherwise, and that language is directly in the statute. And I think the circumstances here show that, again, the UCC warranty was to be excluded. However, the 15-day, 500-mile warranty was not. Counsel, I think you agree that the statutes here, including the federal and the state, wanted to protect consumers and provide for disclosure that no warranties would be applicable, exclusive of the 15, 500, correct? That's right. So given that the Buyer's Guide indicates implied warranties under state law may give you some rights, wouldn't it be best to have the language excluding warranties, the as-is, be on the Buyer's Guide and not in the separate document of the purchase agreement? Perhaps, Your Honor, but again, I would go back to the argument I just made, that the Buyer's Guide isn't the only important document here. The entire contract as a whole is relevant, and that includes several documents, not just the Buyer's Guide alone or any other document standing in isolation. No additional questions, no additional questions. Counsel, if you want to sum up your position. Yes, Your Honor, again, we outlined this in the brief, but it's our position here that the only warranty that applies is the 15-day, 500-mile warranty, that when you view the contract documents as a whole, the UCC implied warranty didn't apply to this transaction. And that's our position, that that's the only reasonable interpretation of the contract here. Thank you. Thank you. Counsel, do you wish to reply? I do, if I may. Defendant is incorrect in at least two respects, which I can identify right now. Number one, defendant argued that they could not modify the Buyer's Guide form, which is a federal form, be used in every state, et cetera, et cetera, et cetera. That is verifiably wrong. I have in my hand the used car rule, which says in section 455.2, quote, if following negotiations you and the buyer agree to changes in the warranty coverage, mark the changes on the form as appropriate. And then it continues saying you can mark it up, you can say as is, or you can say implied warranties. The rule assumes it will be changed to reflect the parties' agreement. It's absolutely not. It's right there in the rules, section 455.2. They can and should modify it depending on what their agreement is. Number two, the Buyer's Guide is the only document that counts here because, again, in the used car rule, section 455.4, it says that it is you may not make any statements, oral or written, or take other actions that alter or contradict disclosures required by the sections for 455.2 and 3. That's the Buyer's Guide. And so in 455.3, it says information you see on the window form is part of this contract. Information on this window form overrides any country provisions in the contract of sales. So when counsel argued that other documents important with respect to others, et cetera, et cetera, that is incorrect. They are not important. Normally in Illinois, we don't have a single document rule because all pieces of paper that relate to the same subject matter considered to be part of the agreement of the contract. There is an exception. With respect to the Buyer's Guide, the feds provide that it is a single document rule. Whatever is in the Buyer's Guide is it. Anything contrary to that, such as their as-is statements and the bill of sale and elsewhere. Your argument is then that the as-is language in the purchase order cannot be considered because it would override the Buyer's Guide. Is that it? Yes. It's irrelevant. It is a legal knowledge. The as-is language disclaims implied warranties. It says so in Section 316 of Article 2. That's how you usually disclaim implied warranties. You say as-is was all false. No implied warranties. Go away. And so that is, of course, the exact opposite of implied warranties. The language as-is in their other contractual documents is a legal knowledge because Section 455.3b of the Used Car Rule says it's overridden. And so we go back to the beginning of the argument, and that is, what are the terms of the Buyer's Guide? Because that's the only operative document in the transaction. The terms of the Buyer's Document says implied warranties only. It does not say, as the Attorney General, former classmate, said in his sample, oh, by the way, we disclaim all other implied warranties, and I put it in my brief. There's a long language that he proposed, which I suppose probably should do the trick for a dealer who wants to disclaim implied warranties on merchant goods. But none of that is in this particular document. It doesn't say as-is. It doesn't say we disclaim the UCC warranty. It does. It says implied warranties, and it has to be more than one. And there is an interplay. Admittedly, there is interplay with the Used Car Rule because it kind of explains why the Buyer's Guide is the only relevant document. It explains why the as-is in their bill of sale is of no consequence. My problem with the court below is also that the language which is required by Section 455.3, which in Section B says the information on the final version, final version means modified by people pursuant to negotiations, of the window form is incorporated in the contract of sale. Information in the window form overrides any country provisions in the contract of sale, for sale. That is exactly the reference to this transaction. for sale. They had certain information which was overridden by law by the Buyer's Guide. To inform the consumer of those facts, include the following language conspicuously in each consumer contract of sale. The information you see is the final. In fact, they committed another violation. They failed to put that language in their bill of sale. So, one of the members of the panel correctly pointed out this is a disclosure issue. The Used Car Rule provides for a regime of disclosure so that regular people who buy cars don't have to be lawyers or bring lawyers with them and to shuffle through multiple documents and to figure out which warrants are present and which are not present. It's all done in one document in, by the way, big letters. Big letters are also described by the statute. I looked it up. It has to be 42 points. That is what conspicuous is. Counsel, your time has expired, and we will take the arguments under consideration that were brought here this morning and issue a decision in due course. We will be in recess until the next case at 1030.